ducted at the same time and accompanying the Savings Plan deductions and contributions to the Pension Fund, Welfare Fund, Educational Fund, Plumbing Council, and Legal Fund. All such remittances shall be made by a single check payable to the L.U. 130 U.A. Contribution Account with the report of hours devised by the Union showing the allocation of each remittance.

SECTION 6.7. Pay at Separation. If an employee is to be laid off or discharged, except for cause, he shall be so notified and paid off in full, at least one-half (1/2) hour before the established quitting time. Should the Employer require the employee to be laid off or discharged to receive his check at the office of the Employer, the employee shall be allowed two (2) hours at regular pay. Should the employee not be paid promptly upon arrival at the office of the Employer, he shall be paid at the regular hourly rate of pay for all time in waiting. Employees covered by this Agreement, who leave an Employer of their own volition, may wait until the regular pay day of the current week to collect wages due.

SECTION 6.8. Bond Requirement. Each Employer shall be required to obtain, maintain in full force and effect and keep on file with the Union a bond to secure all monetary obligations required of the Employer by this Agreement pursuant to the following schedule:

| Number of Employees | Amount of Bond |
|---|---|
| 0 to 2 | $10,000 |
| 3 to 5 | $20,000 |
| 6 to 7 | $30,000 |
| 8 to 10 | $40,000 |
| 11 to 12 | $50,000 |
| 13 or more | $60,000 |

It is agreed that the period of liability pursuant to the bond will cover the unpaid wages and expenses accrued within one hundred and twenty (120) days immediately prior the last date of employment of each employee. The period of liability for payroll deductions and employee contributions required under the terms of the Agreement will be one hundred eighty (180) days immediately preceding the last date of employment of each employee.

Each Employer will obtain the bond required by this Section with a minimum rating of A+ according to the Best or Moody rating service from a broker designated by the Plumbing Contractors Association with agreement from the Union. The rate or cost of the required bond will be determined by such broker, but in no case will the cost be more than that quoted by another broker for a comparable bond.

25

---

SECTION 6.3. Apprentice's Wage. It is understood and agreed that the wages of apprentices learning the plumbing trade and the fringe benefits to be paid on their behalf shall be as set forth or to be determined in the manner as set forth in Appendix C as of the effective dates shown thereon.

SECTION 6.4. Pay Day. Employee members of the Union shall be paid once each week, on the job, not later than the quitting time of the regular established pay day of the Employer. In no event, may the regular pay day be more than four (4) working days after the day on which the Employer's workweek ends. If the regular pay day should fall on the same day as a legal holiday (as set forth in this Agreement), the employee shall be paid on the workday immediately preceding the legal holiday.

SECTION 6.5. Wage Payment. No member shall accept wage payment in cash, but shall only accept payment by check, so that a full and complete record of wages, withholding taxes, social security, pension and welfare contributions and any other deductions required by this Agreement will be readily available.

Any Employer who fails to have sufficient funds in the bank to cover all paychecks issued to employees will be denied the privilege of paying by the normal payroll checks, and must pay all future payroll by certified check only until such time as the Union gives the Employer written notice that it is satisfied that the Employer is financially responsible and, therefore, able to resume payment of payroll by non-certified check. In the event of an Employer's failure to pay the wages provided for in this Agreement or failure to comply with the terms of this Section 6.5, the Union shall have the right, without giving notice to withdraw its members from the employ of, to picket and/or take other lawful economic action against such Employer in order to compel the payment of wages or compliance with this Section 6.5, such withdrawal of employees, picketing and/or lawful economic action shall not be considered a violation of this Agreement on the part of the Union and shall not be a subject of arbitration. If employees are withdrawn from any job or if the Union strikes in order to compel an Employer to fulfill its obligations under this Section, the employees who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay by reason of any strike or any action taken by the Union under this Section.

SECTION 6.6. Union Dues Deduction. The Employer agrees that each payroll period it will deduct the working dues owed to the Union for said payroll period from the wages of employees who are covered by this Agreement and who have authorized such deductions, by an authorization which is in accord with applicable law. The Employer shall remit to the Union the amount so de-

24

In lieu of such bond, the Employer may obtain a bank letter of credit to secure such obligations in such form and on such terms as determined by the Union. This letter of credit shall be held in the Union's possession. An Employer who is unable to obtain such bond or letter of credit shall so certify in writing to the Union and make payment of wages and all deductions and contributions required by this Agreement on a weekly basis by cashier's check.

In the event of an Employer's failure to comply with the obligations imposed by this Section, the Union shall have the right to withdraw its members from the employ of, to picket and/or to use other lawful economic means against such Employer in order to compel compliance herewith. Such withdrawal of employees, picketing or other lawful economic actions shall not be considered a violation of this Agreement on the part of the Union and shall not be subject to arbitration. In no event, will members of the Union be permitted to work for an Employer who does not fulfill the requirements and obligations set forth in this Section.

Further, an Employer who fails to comply with the obligations imposed by this Section shall also be liable to the employees, Union, Trust Funds and other entities, as the case may be, for the payment of liquidated damages in the amount(s) equal to the monetary obligation(s) due and owing them or any of them which the bond or letter of credit required by this Section are designed to secure. The Joint Arbitration Board shall have the power to award such liquidated damages in any proceeding before it which involves a violation of this Section, and such liquidated damages shall be in addition to any and all remedies available for violations of any other provision of this Agreement or under any law of the State of Illinois or the United States.

SECTION 6.9. Prevailing Wage Payment. Any member of another local affiliated with the U.A. working for a contractor signatory with Local Union 130, U.A., will be paid the prevailing rate of Local Union 130, U.A., as well as any member of Local Union 130, U.A. working in the jurisdiction of another Local Union for a contractor signatory with Local Union 130, U.A.

SECTION 6.10. Retirement Savings Fund and Savings Plan. The Employer shall deduct from the wages of each employee subject to the Agreement, the sum of one dollar and fifty cents ($1.50) per hour for each hour worked by journeymen and one dollar ($1.00) per hour for each hour worked by fourth and fifth year apprentices. An employee, in cooperation with his/her Employer, can direct more than the base contribution rate of $1.50 per hour in increments of fifty cents ($.50) but not more than four dollars and fifty cents ($4.50) per hour to either the Plumbers' Retirement Savings Fund (401(k) Plan) or to the Plumb-

26

ers' Savings Plan. Federal law permitting, the maximum contribution to the 401(k) plan may be increased. The parties will meet to discuss any such increase. These deductions shall be withheld from the employee's weekly wages and shall be forwarded by the Employer with the report of hours required under Section 6.6 of Article VI either for deposit in a bank charted by the State of Illinois to be designated by the Union for crediting to the individual account of such employee under the Chicago Journeymen Plumbers' Local Union 130, U.A. Savings Plan (after tax deduction) or to the Chicago Journeymen Plumbers' Union Retirement Savings Trust Fund, Local 130, U.A. (pre-tax deduction) at the election of each employee. It is expressly understood and agreed that neither the Employer nor the Union shall have any right, title, interest, or power over such money so forwarded, but that all money so forwarded, deposited or accrued shall at all times remain the exclusive property of the employee from whose pay such deductions are made.

First, second and third year apprentices covered by the Agreement shall be exempt from this Section 6.10.

For each employee electing to participate in the Chicago Journeymen Plumbers' Union Retirement Savings Trust Fund, Local 130, U.A. (Retirement Savings Trust Fund) each Employer:

a) adopts and agrees to be bound by the terms and conditions of the agreements establishing and governing the Retirement Savings Trust Fund, and any amendments made thereto as though the Trust Agreement was set forth in full;

b) ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of the Retirement Savings Trust Fund, appointed from time to time in accordance with the terms of the Retirement Savings Trust Fund Trust Agreement; and

c) agrees to contribute Pay Deferral Amounts elected under this Section 6.10 into the Retirement Savings Trust Fund, and to be bound by all amendments hereinafter made as if the Employer had signed the original of said Trust Agreements and any Amendments from time to time or to be made.

The manner and frequency of an employee's deferral election is governed by the Plan Document of the Retirement Savings Trust Fund.

27

## ARTICLE VII
### FOREMEN

SECTION 7.1. Foreman's Duties. A foreman shall represent his Employer on a project to the limit of authority prescribed and given by his Employer. Within that authority he shall perform the following duties as applicable for the orderly and efficient installation of the work:

1. Supervise and coordinate the work and activity of the men;
2. Plan and schedule the work, including the necessary layout;
3. Coordinate his work with that of other trades in an orderly fashion;
4. Anticipate and arrange for the delivery of tools and materials without undue frequency;
5. Represent the Employer at job meetings and safety meetings and implement results consistent with the Employer's policy;
6. Reassign employees for the best use of their abilities, when necessary;
7. Attempt to resolve grievances at an early stage;
8. Assemble and verify the time sheets in the form prescribed by the Employer;
9. Update as-built drawings and instructions for the maintenance of equipment and the operation of systems;
10. Keep job log and transmit to the Employer at the conclusion of the work;
11. Stress safe working habits, and supplement all activity in Article IV of this Agreement; and
12. Give notice to the Local Union that the project or job has begun.

A foreman may supervise journeymen and/or apprentices on more than one building provided it is considered within the job site and covered by the same contract and Employer. If it is necessary for an employee covered by this Agreement to supervise work on separate job sites covered by a separate contract, he shall be rated as a Superintendent.

SECTION 7.2. Foreman's Schedule. The following schedule shall determine the supervision on all jobs:

| Journeymen & Apprentices | Sub-Foremen | Foremen | Superintendent |
|---|---|---|---|
| 4 to 9 | 0 | 1 | 0 |
| 10 to 18 | 1 | 1 | 0 |
| 19 to 25 | 2 | 1 | 1 |
| 26 to 35 | 2 | 2 | 1 |
| 36 to 45 | 3 | 2 | 1 |

## ARTICLE VIII
### APPRENTICES

Employers engaged in residential work related to the service, maintenance and construction of single family residences, garden type and walk-up residential apartments of three levels or less as well as Employers engaged in commercial and service maintenance work as described herein shall be entitled to employ one apprentice for each journeyman only on that type of work subject to the following conditions:

a. Commercial work for this purpose shall be defined as interior plumbing work not to exceed $30,000 (the value of which does not include site utilities).
b. At no time may the number of apprentices in the contractor's employ exceed the number of journeymen.
c. All apprentices who have completed at least three years of training may work alone when engaged in residential and commercial service and maintenance work only. Otherwise, apprentices shall work under the normal conditions defined in this Agreement
d. Apprentices will be supplied as needed to satisfy the "1 for 1" Agreement. The contractors will maintain the employment of apprentices as long as they have a sufficient workload (this does not include employment for short periods of time) and upon laying off men, will lay off one (1) Apprentice for each Journeyman (in shops where the "1 for 1" ratio is maintained).
e. Fourth and fifth year apprentices will be required to attend additional continuing education courses as prescribed by the Joint Apprentice Committee. Wages will not be paid for attendance. However, a fifteen dollar ($15.00) per day per diem will be paid by the Employer to offset transportation and meal expenses.

## ARTICLE IX
### FRINGE BENEFITS

SECTION 9.1. Savings Plan. The Employer shall deduct from the wages, after taxes, of each employee subject to this Agreement the sum per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked. These deductions shall be withheld from the employee's weekly wages and shall be forwarded by the Employer with the report of hours required under Section 6.6 of Article VI for deposit in a bank chartered by the State of Illinois to be designated by the Union, for crediting to the individual account of

29

such employee under the Chicago Journeymen Plumbers' Local Union 130 Savings Plan. It is expressly understood and agreed that neither the Employer nor the Union shall have any right, title, interest or powers over such money so forwarded, but that all money so forwarded, deposited or accrued shall at all times remain the exclusive property of the employee from whose pay such deductions are made.

First (1st), second (2nd) and third (3rd) year apprentices, covered by this Agreement shall be exempt from this Section of this Agreement.

SECTION 9.2. Health & Welfare and Pension Plan. Effective as of the dates set forth in Appendix C, each Employer will contribute the sums per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked by and on behalf of each employee covered by this Agreement, including apprentices, to the Plumbers' Pension Fund, Local 130, U.A. and for each hour so worked to the Plumbers' Health and Welfare Fund, Local 130, U.A.

Contributions in themselves are deemed as providing coverage as may be required by the law. Eligibility for coverage is controlled by the trust and is another matter apart and separate.

Each Employer adopts and agrees to be bound by the terms and conditions of the agreements establishing and governing:

a. The Plumbers' Pension Fund, Local 130, U.A. being that Trust Agreement dated May 14, 1953; and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

b. The Plumbers' Welfare Fund, Local 130, U.A., being that Trust Agreement dated October 3, 1950; and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full.

c. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer trustees of each of said Funds who from time to time shall be appointed as such in accordance with the terms of the Trust Agreements.

d. The Employer agrees to make the contributions required by this Section 9.2 and Appendix C into the Funds established and governed by said Trust Agreements and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust Agreements and any amendments from time to time to be made.

Any Contractor employing at least two journeymen or one journeyman and one apprentice as permitted may apply for participation in one or more of the Benefit Funds upon signing a Participation Agreement. If the Contractor is accepted, contributions must be paid on the basis of forty (40) hours each week for the duration of this Agreement.

Contributions to the benefit funds on behalf of members working within the jurisdiction of Local 93 are capped at forty hours.

SECTION 9.3. Apprentice Trust Fund. Effective as of the dates set forth in Appendix C, each Employer will contribute the sum per hour set forth or to be determined in the manner set forth on Appendix C for each hour worked by and on behalf of each employee covered by this Agreement, including apprentices, to the Trust Fund for Apprentice and Journeymen Education and Training, Local Union 130, U.A.

Each Employer adopts and agrees to be bound by the terms and conditions of the Agreement establishing and governing the Trust Fund for Apprentice and Journeymen Education and Training, Local 130, U.A., being that Trust Agreement dated June 1, 1965, and any amendments previously made thereto, with the same force and effect as though said Trust Agreement was set forth here in full. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of said Fund who from time to time shall be appointed as such in accordance with the terms of the Trust Agreement. The Employer agrees to make the contributions required by this Section 9.3 and Appendix C into the Fund established and governed by said Trust Agreement and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of said Trust Agreement and any amendments from time to time made or to be made.

SECTION 9.4. Plumbing Council of Chicagoland. Effective as of the dates set forth in Appendix C, each Employer shall contribute the sums set forth or to be determined in the manner set forth on Appendix C for each hour worked by each employee covered by this Agreement, including apprentices, to the Plumbing Council of Chicagoland, a not-for-profit corporation.

The desired policy and priorities of the Plumbing Council will emanate from the Council Advisory Board appointed by the President of the P.C.A. and whose members will represent the P.C.A. on the All Industry Committee that consists of Management and Labor representatives.

31

EXHIBIT NO.

The Plumbing Council shall protect, promote, foster, and advance the interests of Employers and employees engaged in the plumbing contracting and servicing industry including, but not limited to, the following pursuits.

A. To engage in public relations programs designed to create a better public understanding of the industry and to encourage greater use of the industry's services by owners and construction and service purchasers for the benefit of the general public.

B. To cooperate with public officials and representatives of other organizations on all matters of mutual interest affecting the construction industry.

C. To foster and promote better Employer/employee relationships and to strive for optimum efficiency and workmanship in construction methods.

D. To foster and provide for the education and training of supervisory and managerial personnel.

E. To promote research and experimentation concerned with improving existing construction methods and developing, testing and promoting new construction materials and/or modes of construction.

F. To promote safety in the plumbing contracting industry by developing programs and activities directed at assisting, technically or otherwise, architects, engineers, specification writers, general contractors, and governmental authorities and agencies, in the formulation or improvement of federal, state, and municipal regulations and other technical and safety programs having as their object the safe, adequate and improved quality of plumbing contractors' service to the public.

G. To support the activities and programs of the Association, including collective bargaining and related matters.

H. To foster and promote compliance with all laws, regulations, and orders concerning affirmative action and equal opportunity for employment.

I. To engage in all other acts consistent with the purposes and terms of this Agreement and with the laws of the State of Illinois.

J. No part of the industry Fund shall be used for any purpose which tends to restrain or limit competition.

K. To support public officials who support legislation beneficial to Plumbing Contractors.

The parties agree that since the Plumbing Council is an industry fund, proposals related to it are permissive subjects of bargaining. While the PCA has agreed that the "pursuits" of the Plumbing Council, as described in the Plumbing Council By-Laws adopted October 16, 2000, are to be included in the Collective Bargaining Agreement, that inclusion should not be construed as a waiver of the PCA's position that this entire subject is "permissive" and should not be construed as any restriction on the Plumbing Council's right to interpret, amend or change the By-Laws including the "pursuits" recited therein.

Any amendment, change, or alteration of the existing Plumbing Council By-Laws adopted October 16, 2000 including "the pursuits" recited therein will not in any way alter, amend, change or affect the provisions of Section 9.4, par. 3 of the Collective Bargaining Agreement for the term of this Agreement

SECTION 9.5. Group Legal Services Plan Fund. Effective as of the dates set forth in Appendix C, each Employer shall contribute the sums set forth or to be determined in the manner set forth in Appendix C for each hour worked by each employee covered by this Agreement, including apprentices, to the Chicago Journeymen Plumbers' Local Union 130, U.A. Group Legal Services Plan Fund.

Each Employer adopts and agrees to be bound by the terms and conditions of the Trust Agreement establishing and governing the Chicago Journeymen Plumbers' Local Union 130, U.A. Group Legal Services Plan Fund with the same force and effect as though said Trust Agreement was set forth here in full. The Employer ratifies, accepts and irrevocably designates as its representatives the Employer Trustees of said Fund who from time to time shall be appointed as such in accordance with the terms of the Trust Agreement. The Employer agrees to make the contributions required by this Section 9.5 and Appendix C into the Fund established and governed by said Trust Agreement and to be bound by all amendments thereto hereafter made as if the Employer had signed the original of the Trust Agreement and any amendments from time to time made or to be made.

Proposed Amendments to the Group Legal Services Plan Fund will be reviewed by the Trustees of the Group Legal Services Plan Fund.

32

33

SECTION 9.6. Industry Advancement Fund. The Union agrees to Management's participation in industry advancement funds and will participate as a partner in proposed industry dialogues.

SECTION 9.7. Non-Deduction from Wages. Contributions provided under Sections 9.2, 9.3, 9.4 and 9.5 shall not be deducted from the wages of the employees.

SECTION 9.8. Contribution and Deduction Due Dates. All contributions and deductions provided for in this Agreement are due the first (1st) day of the month following the month for which they are owed. However, contributions and deductions received by the Union by the fifteenth (15th) day of that month will not be subject to interest and liquidated damage charges (e.g. contributions and deductions for the month of June are due July 1, but can be paid up to July 15 without penalty). An Employer who fails to make such contributions and deductions by the due date therefor, shall pay, in addition to the actual delinquent amounts, interest thereon beginning with the due date at the rate of one and one-half percent (1-1/2%) per month thereon and liquidated damages in the amount of eight percent (8%) on the cumulative outstanding balance due. The delinquent Employer shall also be responsible for any employee's claim for Welfare benefits arising during the period of such delinquency.

If discovered that prior contributions or deductions have not been in accordance with the terms of this Agreement, the Employer advised of the discrepancy shall remit the amounts due plus the above described interest and liquidated damages. The Employer may contest the findings as provided in Article III, Section 3.6 of this Agreement. If then found that monies remain due and payable, the Employer shall remit same within thirty (30) days after the findings. Upon failure to remit monies due within thirty (30) days after the findings, the Employer shall additionally reimburse the Trustees of the various Funds and/or the Union for all costs incurred, including but not limited to legal, audit and court fees, in order to enforce collection of the monies due.

The provisions for interest, liquidated damages, reimbursement of litigation costs, strikes, picketing and/or other remedies set forth herein and available to the union and/or Trustees of the various Funds in the event of an Employer's breach of any obligation under this Section 9.8 and Sections 9.1, 9.2, 9.3, 9.4, 9.5, 9.7, and 9.9 of this Article IX, and Sections 6.4, 6.5, and 6.6 of Article VI are cumulative and are not intended to serve and shall not serve as a substitute for or in any way limit any other remedies or relief which also may be available to the Union and/or the Trustees under this Agreement or under any Illinois or federal law. Further, the Union's failure to exercise its rights to withdraw its members from the employ of, to picket, strike or take other lawful economic action against any Employer who violates this Section 9.8 or Sections 9.1, 9.2, 9.3, 9.4, 9.5, 9.7 and 9.9 of this Article IX or Sections 6.4, 6.5, 6.6 of Article VI, and/or the Joint Arbitration Board's failure to award any remedy available hereunder for a violation of such Section or Sections, in either case, shall not be deemed a waiver on the part of the Union or the Joint Arbitration Board to exercise such right or award such remedy, respectively, in the case of any such subsequent violations by the same Employer or another Employer.

Upon five (5) days written notice by Certified Mail the Union shall have the right to withdraw its members from the employ of, to picket and/or to take other lawful action against any Employer who fails to make the required benefit contributions and/or deductions as required by this Agreement. Any employee who loses time from work because of the failure of his Employer to pay said fringe benefit contributions and/or deductions as required by this Agreement, shall be reimbursed by the Employer for up to twenty-four (24) hours wages lost at straight time pay by reason of any strike or other action taken by the Union under this Section. Such withdrawal of employees, picketing and/or other lawful economic action shall not be considered a violation of this Agreement on the part of the Union and shall not be subject to arbitration.

In the event an Employer shall default in the payment of any contributions or deductions provided for by the terms of this Agreement, it shall be considered the same as failure to pay wages.

SECTION 9.9. Employer Recording. Each Employer shall file with the Union on a reporting form to be devised by the Union, on or before the due date for the remittance of contributions and deductions, an itemization of the money payments required to be paid by the Employer covered by said report under the terms of this Agreement. The Union shall have the right to inspect the payroll records of the Employer for the purpose of determining whether the Employer is complying with the provisions of this Agreement relating to the contract rate of wages being paid to employees. The Employer shall make such books and records available at reasonable business times and hours, at the option of the Union, either to a Business Representative of the Union or a representative of a certified public accountant designated by the Union. The Employer shall retain payroll records including but not limited to time sheets for a period of six (6) years. The Union shall have the right upon two (2) days written notice by Certified Mail to withdraw its members from the employ of, to picket and/or to take other lawful economic action against any Employer in order to compel the Employer to make such books and records available. If employees are withdrawn from any job or if

34

35

the Union strikes in order to compel an Employer to make such books and records available, the employees who are affected by such stoppage of work shall be paid for up to twenty-four (24) hours wages lost at straight time pay. Such withdrawal of employees picketing and/or other lawful economic action to compel an Employer to make his books and records available shall not be considered a violation of this Agreement on the part of the Union and it shall not be a subject of arbitration.

## ARTICLE X
### HIRING

Each journeyman shall request a referral slip from the Local Union office when changing jobs and present same to his new Employer. If a journeyman does not obtain said referral slip, he may be cited before the Executive Board of the Union. The Employer may be held responsible to the Joint Arbitration Board for anyone he hires and puts to work without a referral slip. The Union shall refer applicants for employment according to the following minimum standards:

1. The selection of applicants for referral to any job shall be on a nondiscriminatory basis and shall not be based on or in any way affected by the applicant's race, color, religion, creed, sex, national origin, age, marital status, disability or unfavorable discharge from military service in accordance with relevant Illinois, local, and federal law.

2. The Employer shall have the sole and exclusive right of accepting or rejecting applicants for work and need not give preference or priority to applicants referred by the Union.

3. The selection, hiring, supervision and training of all apprentices shall be subject to the rules and control of the Plumbers Joint Apprenticeship Committee IU 130 U.A., and further shall be subject to the Provision of Article X, Paragraph 1 of this Agreement.

4. All referral slips must contain the following information:

   a) The employee's name, social security number, plumbing license number, address, and telephone number;

   b) The employee's certifications, i.e., OSHA, HAZCOM, competent person, safety course, cross connection and back flow license, etc.;

   c) The Employer's name, address, telephone number, the location, date and time, to report, and whom to contact at that location.

A copy of the referral slip will be mailed to the employee, and a copy of the referral slip will be faxed to the Employer.

NOTE: The Plumbing Council of Chicagoland and Plumbing Contractors Association will notify all contractors of the requirement of requesting a referral slip from all new hires. This requirement will also be a subject of discussion at an All Industry meeting.

5. When the Union does not furnish qualified persons within forty-eight (48) hours (Saturdays, Sundays and holidays excluded) of the initial request, the Employer shall be free to obtain people from any source. In doing so the Employer shall be permitted to hire persons. It is understood that preference for such employment shall be given to journeymen with previous experience in the plumbing industry.

## ARTICLE XI
### ON THE JOB INJURIES

Employees covered by this Agreement who, as a result of injuries received on the job, are required to obtain medical aid for such injuries, shall be reimbursed for said time spent in obtaining medical aid. If the Employer's doctor or Employer's insurance company doctor makes available to the injured employee evening or non-working hours for further aid or treatment of an injury, which will not cause a loss of regular work time, then said employee shall arrange to have all further visits to the doctor scheduled for non-working hours.

## ARTICLE XII
### INDUSTRY COMMITTEE

The parties hereto agree that it is in the mutual interest of those engaged in the plumbing industry to have a formal mechanism to deal with issues which concern the industry and which affect the interests of the Employers and Union and employees represented by the Union who are parties to, bound by or covered by this Agreement. Therefore, the parties hereto agree to establish an All Industry Committee to meet, discuss and deal with such issues. Said Committee shall be composed of the President of the Plumbing Contractors Association of Chicago and Cook County; three (3) members appointed by the President of the

36    37

Contractors Association who shall be Employers and who shall serve in an advisory capacity to the Plumbing Council of Chicagoland, Inc.; the Union's Business Manager, and three (3) members appointed by the Business Manager from among the officers of the Union. Co-Chairmen shall be elected (one Labor and one Management) from the designated members of the Committee. The Committee shall meet from time to time as determined by the Co-Chairmen. All meeting expenses and costs shall be shared equally by the Contractors Association and the Union. The expenses and costs incurred by either the Contractors Association or the Union in connection with any action or undertaking by those respective parties related to or arising out of any matter considered by the Committee shall be borne by the party taking such action.

## ARTICLE XIII
### JURISDICTIONAL DISPUTES

The Employer and Union agree that in the event of any jurisdictional dispute between the Union and another labor organization bound by the Standard Agreement establishing the Joint Conference Board of the Construction Employers' Association and the Chicago and Cook County Building Trades Council with respect to any work at or related to any site or project within Cook County, Illinois at which the Employer is engaged or is to be engaged as a contractor or a subcontractor or to perform any work, said dispute shall be submitted to said Joint Conference Board for final and binding resolution pursuant to said Standard Agreement and the Board's procedures thereunder. The Employer and Union agree to be bound by the procedures and decision of the Joint Conference Board with respect to any such dispute in accordance with said procedures.

## ARTICLE XIV
### SUCCESSORS AND ASSIGNS

SECTION 14.1. Employer Entities Bound. This Agreement is binding upon the Employer regardless of whether he or it changes the name or address of his or its business and upon any other business entity within the trade and territorial jurisdiction of the Union which is owned, managed, controlled and/or operated by the Employer or its principals or any of them. This paragraph is intended to apply to the scope of work covered by this Agreement and shall not be construed as adding to the scope of such work.

SECTION 14.2. Successors and Assigns. This Agreement shall be equally binding on the Employer and its successors and assigns and it is the intent of the parties that this Agreement shall remain in effect for its full term

and bind the successors of the respective parties. In furtherance of this intent, it is agreed that in the event of any sale, merger, acquisition, consolidation or any other transfer of the Employer's business, the Employer shall make it a condition of such transfer and the agreement by which any such transfer is accomplished shall provide that the transferee shall be bound by the terms of this Agreement. The Employer shall give the Union written notice of any such transfer at least ten (10) days prior to the closing date thereof and specifically advise the Union in said notice that the provisions of this Article have been complied with.

## ARTICLE XV
### ANNUAL REOPENERS

ARTICLE XV HAS BEEN INTENTIONALLY LEFT BLANK

## ARTICLE XVI
### MISCELLANEOUS

SECTION 16.1. Separable Provisions. Each and every clause of this Agreement shall be deemed separable from each and every other clause of this Agreement to the end that in the event that any clause or clauses of this Agreement shall be specifically and finally determined to be in violation of any Illinois or federal law, then in such event such clause or clauses only, to the extent only that any may be so in violation, shall be deemed of no force and effect and unenforceable upon written notice of such invalidity from one party to the other, without such invalidity impairing the validity and enforceability of the rest of the Agreement including any and all provisions in the remainder of any clause, sentence or paragraph in which the language determined to be invalid may appear. In the event of such invalidity and notice thereof, the parties shall meet promptly at the request of either party to negotiate mutually acceptable substitute language. If the parties are unable to agree on such substitute language, either party shall be permitted to exercise all legal and lawful economic recourse in support of its demands notwithstanding any provisions of this Agreement to the contrary.

SECTION 16.2. Duration of Agreement. The collective bargaining agreement between the Chicago Journeymen Plumbers' Local 130, U.A. and the Plumbing Contractors Association of Chicago and Cook County shall be in effect between June 1, 2001 and May 31, 2004, and thereafter for successive yearly periods, unless at least sixty (60) days prior to the expiration of the initial period or any yearly period thereafter, either party hereto shall give written notice to the other of its intention to modify or terminate the Agreement.

# ARTICLE XVII
## SERVICE & MAINTENANCE AGREEMENT

The Agreement recognizes that there exists a Plumbing Service & Maintenance Area agreement, the Chicago Journeymen Plumbers' Local Union 130, U.A. Service & Maintenance Agreement. Whenever the terms of this Agreement shall conflict with the terms of the Service & Maintenance Agreement, the terms of the Service & Maintenance Agreement shall control.

This Agreement is hereby executed as of the 1st day of June 2001 at Chicago, Illinois.

PLUMBING CONTRACTORS ASSOCIATION OF
CHICAGO AND COOK COUNTY

George W. Treutelaar       John J. Cahill
Chairman of Labor Relations    Committee Labor Relations Committee

Edward J. Howe             Walter A. Brongiel
Labor Relations Committee  Labor Relations Committee

Peter J. Fazio
Labor Relations Committee

CHICAGO JOURNEYMEN PLUMBERS'
LOCAL UNION 130, U.A.

Gerald M. Sullivan         James T. Sullivan
Business Manager           Secretary-Treasurer

James F. Coyne
Recording Secretary

40

# APPENDIX A
## OCCUPATIONAL JURISDICTION

The following shall constitute the occupational jurisdiction of work of the Union:

1. All piping for plumbing, water, waste, floor drains, drain grates, supply, leader, soil pipe, grease traps, sewage and vent lines.
2. All piping for water filters, water softeners, water meters and setting of same.
3. All cold, hot and circulating water lines, piping for house pumps, cellar drainers, ejectors, house tanks, pressure tanks, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances and the handling and setting of the above mentioned equipment.
4. All water services from mains to buildings, including water meters and water meter foundations.
5. All water mains from whatever source, including branches and fire hydrants, etc.
6. All down spouts and drainage areas, soil pipe, catch basins, manholes, drains, gravel basins, storm sewers, septic tanks, cesspools, water storage tanks, etc.
7. All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and washrooms, shower stalls, etc.
8. All bathroom, toilet room and shower room accessories, i.e., as towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.
9. All lawn sprinkler work, including piping, fittings and lawn sprinkler heads.
10. All sheet lead lining for X-ray rooms, fountains, swimming pools or shower stalls, tanks or vats for all purposes and for roof flanges in connection with the pipe fitting industry.
11. All fire stand pipes, fire pumps, pressure and storage tanks, valves, hose racks, fire hose cabinets and accessories and all piping for sprinkler work of every description.
12. All block tin coils, carbonic gas piping, for soda fountains and bars, etc.
13. All piping for railing work, and racks of every description, whether screwed or welded.
14. All piping for pneumatic vacuum cleaning systems of every description.
15. All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil, or gas, used in connection with railway cars, railway motor cars, and railway locomotives.

41

16. All marine piping, and all piping used in connection with ship building and ship yards.
17. All power plant piping of every description.
18. The handling, assembling and erecting of all economizers and superheaters, regardless of the mode or method of making joints, hangers and erection of same.
19. All internal and external piping on boilers, heaters, tanks and evaporators, water legs, water backs and water grates, boiler compound equipment, etc.
20. All soot blowers and soot collecting piping systems.
21. The setting, erecting and piping, for all smoke consuming and smoke washing and regulating devices.
22. The setting, erecting and piping of instruments, measuring devices, thermostatic controls, gauge boards, and other controls used in connection with power, heating, refrigerating, air conditioning, manufacturing, mining and industrial work.
23. The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, coolers, and all piping for same in power houses, distributing and boosting stations, refrigeration, bottling, distilling and brewing plants, heating, ventilating and air conditioning systems.
24. All piping for artificial gases, natural gases and holders and equipment for same, chemicals, minerals and by-products and refining of same, for any and all purposes.
25. The setting and erecting of all under-feed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping and accessories and parts of burners and stokers, etc.
26. All ash collecting and conveyor piping systems, including all air washing and dust collecting piping and equipment, accessories and appurtenances and regulating devices, etc.
27. The setting and erection of all oil heaters, oil coolers, storage and distribution tanks, transfer pumps, and mixing devices, and piping thereto of every description.
28. The setting and erecting and piping of all cooling units, pumps, reclaiming systems and appurtenances, in connection with transformers, and piping to switches of every description.
29. All fire extinguishing systems and piping; whether by water, steam, gas or chemical, fire alarm piping, and control tubing, etc.
30. All piping for sterilizing, chemical treatment, deodorizing and all cleaning systems of every description and laundries for all purposes.
31. All piping for oil or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.
32. All piping for power, or heating purposes, either by water, air, steam, gas, oil, chemicals or any other method.
33. All piping, setting and hanging of all units and fixtures for air conditioning, cooling, heating, roof cooling, refrigerating, ice-making, humidifying, dehumidifying, dehydrating, by any method, and the charging and testing, servicing of all work after completion.
34. All pneumatic tube work, and all piping for carrying systems by vacuum, compressed air, steam, water, or any other method.
35. All piping to stoves, fire grates, blast and heating furnaces, ovens, driers, heaters, oil burners, stokers and boilers and cooking utensils, etc. of every description.
36. All piping in connection with central distribution filtration treatment stations, boosting stations, waste and sewage disposal plants, central chlorination and chemical treatment work, and all underground supply lines to cooling wells, suction basins, filter basins, settling basins, and aeration basins.
37. All process piping for refining, manufacturing, industrial and shipping purposes, of every character and description.
38. All air piping of every description.
39. All temporary piping of every description in connection with building and construction work, excavating and underground construction.
40. The laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduits and boxes used in connection with the pipe fitting industry.
41. The handling and setting of boilers, setting of fronts, setting of soot blowers, and attaching of all boiler trimmings.
42. All pipe transportation lines for gas, oil, gasoline; fluids and liquids, water aqueducts, and water lines and booster stations of every description.
43. All acetylene and arc welding, brazing, lead burning, soldered and wiped joints, caulked joints, expanded joints, rolled joints or any other mode or method of making joints in connection with the pipefitting industry.
44. Laying out, cutting, bending and fabricating of all pipe work of every description, by whatever mode or method.
45. All methods of stress relieving of all pipe joints made by every mode or method.
46. The assembling and erecting of tanks used for mechanical, manufacturing or industrial purposes, to be assembled with bolts, packed or welded joints.
47. The handling and using of all tools and equipment that may be necessary for the erection and installation of all work and materials used in the pipefitting industry.

42

43

48. The operation, maintenance, repairing, servicing and dismantling of all work installed by journeymen under this Agreement.

49. All piping for cataracts, cascades, i.e., (artificial water falls), make-up water fountains, captured waters, water towers, cooling towers, and spray ponds, used for industrial, manufacturing, commercial, or any other purpose.

50. Piping herein specified means pipe made from metals, tile, glass, rubber, plastic, wood, or any other kind of material or product manufactured into pipe, usable in the pipe fitting industry, regardless of size or shape.

51. The installation and testing of backflow preventors.

## APPENDIX B
## FLEXIBLE WORK DAY AND WORK WEEK

Except as specifically permitted under the following provisions of this Appendix B governing flexible work days and the flexible work week, employees covered by the Agreement to which this Appendix B is attached shall work the standard work day and standard work week at the straight time rates and be paid for overtime work at the overtime rates as provided in Section 5.2 of the Agreement.

1. Only Employers who employ apprentice plumbers may be permitted to utilize a flexible work day or a flexible work week. An adequate quantity of competent apprentices are available through the Joint Apprenticeship Committee.

2. The flexible work day and flexible work week are not permitted for any work done on a contract basis. They are permitted only under the terms further specified hereinbelow for residential, commercial or industrial jobbing repair and/or service work billed to the customer on an hourly basis.

3. No employee may be scheduled for or required to work more than eight (8) flexible hours in any work week.

4. The flexible work day, Monday through Friday, consists of up to eight (8) consecutive hours between 6:00 a.m. and 8:30 p.m., exclusive of a one-half (1/2) hour unpaid meal break to be taken no later than five (5) hours after the employee's starting time; provided, however, that in no event may such a flexible work day start later than 12:00 p.m. (noon). The pay rate for flexible hours worked before the regular starting time for the Employer's shop (i.e. 7:00 a.m. or 8:00 a.m.) and after the regular quitting time (i.e. 3:30 p.m. or 4:30 p.m.) shall be the regular straight time hourly rate plus fifteen percent (15%). All hours worked on such days in excess of eight (8) hours shall be paid at one and one-half (1-1/2) times the regular straight time hourly rate.

5. Eligible Employers may schedule Saturdays as a regular fifth (5th) flexible work day in any work week for jobbing repair and/or service work. In such cases, the Saturday flexible work day shall consist of the hours between 8:00 a.m. and 4:30 p.m. Employees who are required to perform any commercial or industrial jobbing repair and/or service work or to perform jobbing repair and/or service work in a residential structure of no more than three (3) stories during such hours on Saturdays shall be paid at their regular straight time hourly rate plus fifteen percent (15%) for all such hours. All jobbing repair and/or service work performed on such Saturdays before 8:00 a.m. or after 4:30 p.m. shall be paid for at one and one-half (1-1/2) times the regular hourly rate. Such Saturdays cannot be used as a make-up day. All work for which flexible time is permitted by this Appendix "B" to be performed on Sunday or a legal holiday identified as such in the Agreement shall be paid at double time.

44

45

# APPENDIX C

## WAGE RATES AND FRINGE BENEFITS AND PAYROLL DEDUCTIONS

The following wage rates and fringe benefit contributions per hour and payroll deductions shall be in effect as of June 1, 2001 through May 31, 2002.

### PAYROLL DEDUCTIONS

|  | Wages | Welfare | Pension | Education* | Promotion | Legal Service | 401k or Savings Plan | Working Dues |
|---|---|---|---|---|---|---|---|---|
| Journeymen | $33.75 | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |
| Sub-Foremen | 35.00 | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |
| Foremen and Inspectors (supervising four or more men) | 35.75 | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |
| Superintendents or District Foremen (supervising 19 or more men) | 36.75 | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |
| General Superintendents or xx District Superintendents** |  |  |  |  |  |  |  |  |
| **at least 6% above Superintendent's wage rate per hour |  |  |  |  |  |  |  |  |

|  | Wages | Welfare | Pension | Education* | Promotion | Legal Service | 401k or Savings Plan | Working Dues |
|---|---|---|---|---|---|---|---|---|
| Apprentices |  |  |  |  |  |  |  |  |
| (1st six months) | 11.50 | 4.25 | 2.84 | .44 | .34 | .39 | N/A | N/A |
| (2nd six months) | 12.50 | 4.25 | 2.84 | .44 | .34 | .39 | N/A | .20 |
| 2nd Year | 14.85 | 4.25 | 2.84 | .44 | .34 | .39 | N/A | .20 |
| 3rd Year | 16.90 | 4.25 | 2.84 | .44 | .34 | .39 | N/A | .20 |
| 4th Year | 22.30 | 4.25 | 2.84 | .44 | .34 | .39 | 1.00 | .20 |
| 5th Year | 25.30 | 4.25 | 2.84 | .44 | .34 | .39 | 1.00 | .20 |

*Includes $0.05 per hour Direct Contribution to the U.A. Training Fund

Wage increases of $1.65 per hour effective June 1, 2002 and $1.70 per hour effective June 1, 2003 have been negotiated under the terms of this Agreement for Journeymen Plumbers. Apprentice wage increases effective June 1, 2002 and June 1, 2003 will be determined on the same percentage as the Journeymen rate. These increases for journeymen and apprentices are to be allocated in a manner to be determined by Chicago Journeymen Plumbers' Local Union 130, U.A. in its sole and exclusive discretion. Local 130 will timely notify each signatory Employer of its determination concerning the allocation.

46

# IMPORTANT INFORMATION

## PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN) AND SAVINGS PLAN

### PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN):

The Employer shall deduct from the wages (before taxes) of each journeyman plumber enrolled in the 401(k) Plan one dollar and fifty cents ($1.50) per hour worked for the Plumbers' Retirement Savings Fund (401(k) Plan). The Employer shall deduct from the wages (before taxes) of each Fourth and Fifth year Apprentice enrolled in the 401(k) Plan one dollar (1.00) per each hour worked for the Plumbers Retirement Savings Fund (401(k) Plan).

### REGULAR SAVINGS PLAN:

The Employer shall deduct from the wages (after taxes) of each journeyman plumber not enrolled in the 401(k) plan one dollar and fifty cents ($1.50) per hour worked for the Savings Plan. The Employer shall deduct from the wages (after taxes) of each Fourth year and Fifth year Apprentice not enrolled in the 401(k) plan one dollar ($1.00) per each hour worked for the Savings plan. First, Second and Third year Apprentices are not included in this Plan.

### WORKING DUES:

The Employer shall deduct (after taxes) twenty-five cents ($0.25) per hour for each hour worked for each Journeyman, Foreman, Superintendent and General Superintendent, and twenty cents ($0.20) per each hour worked for each Apprentice, with the exception of first year-first six months Apprentices for Working Dues.

### IMPORTANT NOTE

### PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN)

A participant in cooperation with his/her Employer, can direct more than the base contributions rate of $1.50 per hour, in increments of ($0.50) fifty cents, but not more than $4.50 per hour to the 401(k) Plan.

A contractor is not bound under the terms of our Agreement to deduct more than the base contribution rate of $1.50 per hour.

### PLUMBERS' SAVINGS PLAN

An employee, in cooperation with his/her Employer, has the following options:
1) An employee not participating in the 401(k) Plan can allocate more than $1.50 per hour, in increments of fifty cents ($0.50), to the Plumbers' Savings Plan.
2) An employee in the 401(k) Plan can allocate at least $1.50 per hour or more, in fifty cents ($0.50) increments, to the Plumbers' Savings Plan, in addition to amounts contributed to the employee's 401(k) Plan.

An Employer is not bound under the terms of our Agreement to comply with options 1 or 2.

47